108 F.3d 1394
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
ROTON BARRIER, INC. and Austin R. Baer, Plaintiff-Appellees,
v.
THE STANLEY WORKS, Defendant-Appellant.
 No. 96-1459.
 United States Court of Appeals, Federal Circuit.
 March 11, 1997.
 
 Before RICH, PLAGER, and BRYSON, Circuit Judges.
 RICH, Circuit Judge.
 
 
 1
 The Stanley Works (Stanley) appeals from the entry of a modified injunction by the United States District Court for the Eastern District of Missouri, after remand from this court, wherein Stanley is barred from manufacturing or having manufactured continuous pinless hinges and from using, disclosing, or disseminating the trade secrets of Roton Barrier, Inc. and Austin B. Baer (collectively Roton). We affirm.
 
 Decision
 
 2
 The district court originally entered judgment against Stanley for misappropriation of trade secrets of Roton. The district court ordered that:
 
 
 3
 Stanley Works, its agents, servants, and employees are enjoined from participating or otherwise engaging in the continuous pinless hinge business ... in any manner whatsoever, including any manufacture, sale, purchase, marketing, promotion, solicitation, advertising, consultation, and/or other assistance of any others in any such efforts, for a period of four (4) years from the date of the Court's Judgment of January 27, 1995.[1]
 
 
 4
 ... Stanley Works, its agents, servants, and employees are permanently enjoined from further using, disclosing, and/or otherwise disseminating any of [Roton's] trade secret business and technical information in any manner whatsoever.
 
 
 5
 On the former appeal by Stanley to this court, we held that the above-quoted first injunction limited lawful activity such as buying continuous pinless hinges for resale from those who lawfully manufactured the hinges without the benefit of Roton's trade secrets. Therefore, we found the injunction too broad. As to the second injunction , we held that it did not set forth in reasonable detail the trade secret business and technical information that could not be disseminated. Roton Barrier, Inc. v. The Stanley Works, 79 F.3d 1112, 1121-22 (Fed.Cir.1996). We remanded to the district court for further proceedings consistent with that ruling.
 
 
 6
 On remand, the district court entered the following modified and amplified injunction.
 
 
 7
 [U]ntil January 27, 1999, [Stanley is] enjoined from manufacturing, and/or having manufactured on its behalf, continuous pinless hinges, in any manner whatsoever. Provided, however, this injunction shall not preclude defendant Stanley from purchasing and reselling continuous pinless hinges which are lawfully commercially available in the marketplace from other vendors [excluding Select Products, Ltd., Special-Lite, Inc., and Linn Products, Inc.] so long as defendant Stanley does not further use, disclose, and/or otherwise disseminate any of plaintiffs' trade secret information as specified below.
 
 
 8
 [U]ntil January 27, 1999, [Stanley is] enjoined from engaging and/or participating in the continuous pinless hinge business with Select Products, Ltd., Special-Lite, Inc., [and] Linn Products, Inc.....
 
 
 9
 [Stanley], and all persons who are and/or were in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, are permanently enjoined from further using, disclosing, and/or otherwise disseminating Roton's trade secret information learned during Stanley's negotiations with Roton between January 1, 1989 and December 31, 1989. The trade secret information is defined to include and be limited to the following information [disclosed to, and learned by, Stanley from Roton, Baer, and/or their accountants or attorneys between January 1, 1989 and December 31, 1989, except information which cannot be classified or no longer is a trade secret]:
 
 
 10
 a) the relative value and/or cost of any or all of Roton's equipment and machinery ...;
 
 
 11
 b) the relative amount or range of Roton's capital investment in any or all of its machinery, equipment and manufacturing facility ...;
 
 
 12
 c) the relative amount and range of Roton's return on its investment ...;
 
 
 13
 d) the relative amount or range of Roton's gross margins ...;
 
 
 14
 e) Roton's top ten customers and the relative amount or range of sales made to such customers ... provided, however, this injunction does not prohibit Stanley from selling to any customers so long as it does not use trade secret information in making such sales;
 
 
 15
 f) Roton's cost of materials, expenses and breakdowns ...;
 
 
 16
 g) Roton's horizontal milling process ...;
 
 
 17
 h) Roton's horizontal milling machine design ...;
 
 
 18
 i) Roton's volume and/or proportion of sales of hinges by hinge models ...;
 
 
 19
 j) Roton's best-selling hinge profiles/models ...;
 
 
 20
 k) Roton's method and mechanism for sizing and fitting cover channels onto hinges ...;
 
 
 21
 l) the type and formulation of lubrication that Roton uses on its hinges ...;
 
 
 22
 m) the fixturing method and mechanism used on Roton's horizontal milling machines ...;
 
 
 23
 n) Roton's marketing strategies ...;
 
 
 24
 o) Roton's pricing and discount information and structures ...;
 
 
 25
 p) Roton's financial and business information reflected in and on the balance sheets, income statements and tax returns for the years 1984 through 1989, that Roton, Baer, and/or their accountants or attorneys provided or otherwise disclosed to Stanley, and any information that was or could be derived therefrom.
 
 
 26
 Stanley appeals from the district court's second order setting forth three injunctions as described above.
 
 Discussion
 
 27
 Stanley complains that the new first injunction set forth above still bars it from the lawful activity of manufacturing or having manufactured by a third party provided with only design and specification data, any continuous pinless hinge, including its own LS500 patented hinge, even if none of Roton's trade secrets are utilized. Only if Stanley's activities will inevitably lead it to rely on Roton's trade secrets, Stanley asserts, should it be enjoined from such an activity as a misappropriation of a trade secret.
 
 
 28
 Based on its arguments asserting overbreadth of the first injunction, Stanley attacks the second injunction for preventing it from selling its LS500 hinges to Select Products Ltd. The third trade secret injunction, Stanley asserts, sets forth sixteen broad categories of information without the necessary detail to apprise Stanley of the conduct that could expose it to contempt proceedings in contravention of Rule 65(d) of the Federal Rules of Civil Procedure.
 
 
 29
 Roton asserts that Stanley admittedly never possessed the knowledge or ability to manufacture Roton-type hinges because of the strict tolerances necessary for such hinges. Other competitors in the market that developed similar technology to Roton's continuous pinless hinges without the benefit of Roton's trade secrets spent at least five years developing the technology honestly. Therefore, by misappropriating Roton's trade secret information, Roton argues, Stanley acquired a four-year commercial advantage that the first injunction remedies.
 
 
 30
 Finally, Roton asserts that the district court defined in substantial detail sixteen specific groups of proprietary, confidential information to which Stanley was privy and which should be protected from dissemination. Roton asserts that the district court has not abused its discretion in fashioning this third trade secret injunction and that any more specificity in the injunction would allow Stanley to evade censure for further harm to its trade secrets.
 
 
 31
 The district court's findings of fact are replete with instances of Stanley's unlawful use of Roton's trade secrets to craft its LS500 continuous pinless hinge allegedly covered by its U.S. Patent No. 5,062,181. The district court concluded that "[b]ut for Stanley's misappropriation and wrongful use of Roton's trade secrets, Stanley would not have been able to make, market and sell its full spectrum of LS500 hinge products for at least three and one-half to five years."
 
 
 32
 We have agreed with the district court's assessment of such illegal use of Roton's trade secrets in the development of Stanley's LS500 hinge. We stated in our previous opinion that:
 
 
 33
 It is abundantly clear from the record that parties at Stanley instrumental in reviewing Roton's manufacturing facilities and financial data were the same people placed in charge of developing the LS500....
 
 
 34
 ... Thus, individuals at Stanley, who knew they were bound by the Confidentiality Agreement, knew they were disclosing and using Roton's trade secret information for the development of the LS500.
 
 
 35
 Roton, 79 F.3d at 1119-20. We further found that:
 
 
 36
 [I]t is quite telling that as early as 1976 Stanley had determined that it could not manufacture Roton-type hinges because such manufacture required tolerances not achievable by Stanley. Yet after twice touring Roton's facility and being privy to virtually all of Roton's technical and financial information, Stanley was able to quickly design, have manufactured and market its own continuous pinless hinge.
 
 
 37
 Id. at 1120.
 
 
 38
 Stanley's LS500 is inextricably linked with Roton's trade secrets. Stanley cannot now claim that it can divorce itself from its knowledge of Roton's trade secrets to produce, or have produced, its LS500 hinges without utilizing such trade secrets. Under Illinois law,
 
 
 39
 [b]y enjoining the use of wrongfully acquired trade secrets for the approximate length of time it would require a legitimate competitor to develop a competitive product following a lawful disclosure of the information, the wrongdoer is deprived of any advantage from his wrongdoing, the developer of the trade secret is placed in the same position it would have occupied if the breach of confidence had not occurred, and the minimum restraint consistent with the other objectives would be placed upon competitors and the utilization of the competitors' and the employees' skills.
 
 
 40
 Brunswick Corp. v. Outboard Marine Corp., 79 Ill.2d 475, 479, 404 N.E.2d 205, 207, 38 Ill.Dec. 781, 783 (1980). The district court's injunction was appropriately circumscribed to do just that without depriving Stanley of participation in the continuous pinless hinge market by lawful means. We affirm the district court's first injunction. Because we find that Stanley may not make or have made on its behalf the LS500, we also affirm the second injunction.
 
 
 41
 We also find that the district court did not abuse its discretion in setting forth Roton's trade secrets that Stanley is enjoined from disclosing in the third injunction. As we have stated, the district court need only provide reasonable detail of the acts to be restrained. Roton 79 F.3d at 1122. We find that the district court has done so in the third injunction. Therefore we affirm the district court's third injunction.
 
 
 
 [1]
 The district court specifically allowed Stanley time to fill unfilled orders for continuous pinless hinges for contracts which existed prior to entry of the district court's judgment and allowed Stanley to collect payment for sales of continuous pinless hinges that occurred prior to, or for which unfilled contracts existed prior to, entry of the district court's judgment